Tiffany Troy, Esq.
John Troy, Esq.
Aaron B. Schweitzer, Esq.
TROY LAW, PLLC
41-25 Kissena Boulevard
Suite 110
Flushing, NY 11355
Phone (718) 762-1324
Fax (718) 762-1342
troylaw@troypllc.com
*Attorneys for Plaintiffs*
*John Troy, Esq. and Aaron B. Schweitzer, Esq.*
*to be admitted* pro hac vice

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

----------------------------------------------------------------x

DENGTAO CAO
     a/k/a Phillip Cao,
*on behalf of himself and others similarly situated,*
                        Plaintiff,

                 v.

HUNGRY POT DARTMOUTH INC.,
HUAXIN CHEN,
HONG AN ZHENG,
YI PING ZHENG,
SHUO CHEN, and
LEO "DOE,"

                       Defendants.

----------------------------------------------------------------x

**Case No. 24-cv-11797**

**COLLECTIVE & CLASS**
**ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff DENGTAO CAO a/k/a Phillip Cao (hereinafter "Cao" or "Plaintiff"), by and through his attorney, Tiffany Troy of Troy Law, PLLC (and John Troy and Aaron B. Schweitzer of Troy Law, PLLC, to be admitted *pro hac vice*), hereby bring this Complaint against Defendants HUNGRY POT DARTMOUTH INC. (hereinafter "Hungry Pot Dartmouth" or "Corporate Defendant"), HUAXIN CHEN (hereinafter "H. Chen"), HONG AN ZHENG (hereinafter "H. Zheng"), YI PING ZHENG (hereinafter "Y. Zheng"), SHUO CHEN (hereinafter "S. Chen"), and LEO "DOE" (hereinafter "Leo") (Leo hereinafter collectively with H. Chen, H. Zheng, Y. Zheng,

and S. Chen "Individual Defendants") (Individual Defendants hereinafter collectively with Corporate Defendant, "Defendants"), and alleges as follows:

## INTRODUCTION

1.      Plaintiff brings this action, on behalf of himself and other similarly situated employees of Hungry Pot Dartmouth's Korean barbecue, hot pot, and all-you-can-eat restaurant, located at 466 State Road, Dartmouth, MA 02747, against Defendants for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 203(m)(2)(B), 206(a)(1), 207(a)(1), the Massachusetts Labor and Industries law ("MLI"), Mass. Gen. L. ch. 149 § 152A, and the Massachusetts Minimum Fair Wages law ("MMFW"), Mass. Gen. L. ch. 151 §§ 1, 1A, arising from Defendants' various willful, malicious, and unlawful employment policies, patterns, and/or practices.

2.      Plaintiff alleges pursuant to FLSA, 29 U.S.C. § 216(b), that he is entitled to recover from the Defendants: (1) unpaid minimum wages; (2) unpaid overtime wages; (3) unlawfully withheld tips; (4) liquidated damages equal to unpaid minimum wages, unpaid overtime wages, and unlawfully withheld tips, or prejudgment interest; (5) postjudgment interest; and (5) reasonable attorneys' fees and costs.

3.      Plaintiff further alleges pursuant to MLI, Mass. Gen. L. ch. 149 §§ 150, 152A(f), that he is entitled to recover from the Defendants: (1) unlawfully withheld tips; (2) liquidated damages equal to three times unlawfully withheld tips; (3) prejudgment interest; (4) postjudgment interest; and (5) reasonable attorneys' fees and costs.

4.      Plaintiff further alleges pursuant to MMFW, Mass. Gen. L. ch. 151 § 20, that he is entitled to recover from Defendants: (1) unpaid minimum wages; (2) unpaid overtime wages; (3) liquidated damages equal to three times unpaid minimum wages and unpaid overtime wages; (4) prejudgment interest; (5) postjudgment interest; and (6) reasonable attorneys' fees and costs.

5.      Plaintiff has fulfilled all conditions precedent.

6.      On July 3, 2024, Plaintiff received a letter from the Massachusetts Attorney General authorizing a private right of action as to his claims under the MLI and MMFW against Defendants.

## JURISDICTION & VENUE

7.      This Court has subject matter jurisdiction over this controversy under the FLSA, 29 U.S.C. § 216, and 28 U.S.C. § 1331. As set forth more fully below, Defendants are a covered enterprise under the FLSA, 29 U.S.C. § 203(s), inasmuch as Defendants operate an enterprise engaged in interstate and/or foreign commerce, that enterprise had more than $500,000.00 in gross annual revenue during the relevant period, and Plaintiff and other employees handled goods that had been moved in commerce.

8.      This Court has supplemental jurisdiction over Plaintiff's MLI and MMFW claims under 28 U.S.C. § 1367(a), as Plaintiff's FLSA, MLI, and MMFW claims are so closely related as to form a single case or controversy under Article III of the United States Constitution.

9.      Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1391, because Defendants reside and/or conduct business in the District of Massachusetts, and because the acts and omissions giving rise to the claims alleged herein took place within the District of Massachusetts.

## PLAINTIFF

10.     Cao was employed by Defendants to work as a server at Hungry Pot Dartmouth from April 17, 2024 through April 23, 2024.

## DEFENDANTS

### *HUNGRY POT DARTMOUTH INC.*

11.     Corporate Defendant was, throughout the period relevant to this lawsuit, a domestic profit corporation with a registered office and principal place of business at 466 State Road,

Dartmouth, MA 02747, where it operated "Hungry Pot Dartmouth," a Korean barbecue, hot pot, and all-you-can-eat restaurant.

12.    Hungry Pot Dartmouth was, throughout the period relevant to this lawsuit, a business with gross annual revenue in excess of five hundred thousand dollars ($500,000.00) per year—according to Plaintiff's observations, Corporate Defendant had an average gross daily revenue of approximately two thousand nine hundred dollars ($2,900.00); Corporate Defendant's restaurant operated seven (7) days per week, fifty-two (52) weeks per year, amounting to gross annual revenue of approximately one million fifty-five thousand six hundred dollars ($1,055,600.00).

13.    Hungry Pot Dartmouth was, throughout the period relevant to this lawsuit, a business engaged in interstate or foreign commerce, including in ingredients for various dishes, whose employees, including Plaintiff, handled goods moved in commerce, including ingredients and cleaning supplies.

14.    Hungry Pot Dartmouth throughout the period relevant to this lawsuit employed about nineteen (19) employees, including Plaintiff but not including managers, at any one time: about nine (9) in the front of the house, including servers; and about ten (10) in the back of the house kitchen.

*HUAXIN CHEN*

15.    H. Chen was, throughout the period relevant to this lawsuit, the President of Corporate Defendant, who had the power to hire and fire employees, supervised Plaintiff and the other employees, gave Plaintiff and other employees their assignments, determined Plaintiff's and other employees' schedules, determined Plaintiff's and other employees' salaries, and prepared and kept records of the employee payroll.

16.     Throughout the period relevant to this lawsuit, H. Chen exercised financial and operational control over the Corporate Defendant, and controlled Plaintiff's and other employees' employments at Hungry Pot Dartmouth.

17.     H. Chen acted willfully, intentionally, and maliciously and was Plaintiff's employer, and the employer of other employees similarly situated, within the meaning of FLSA, MLI, and MMFW, and is jointly and severally liable with Corporate Defendant under the FLSA, MLI, and MMFW.

### *HONG AN ZHENG*

18.     H. Zheng was, throughout the period relevant to this lawsuit, the Treasurer of Corporate Defendant, who had the power to hire and fire employees, supervised Plaintiff and the other employees, gave Plaintiff and other employees their assignments, determined Plaintiff's and other employees' schedules, determined Plaintiff's and other employees' salaries, and prepared and kept records of the employee payroll.

19.     Throughout the period relevant to this lawsuit, H. Zheng exercised financial and operational control over the Corporate Defendant, and controlled Plaintiff's and other employees' employments at Hungry Pot Dartmouth.

20.     H. Zheng acted willfully, intentionally, and maliciously and was Plaintiff's employer, and the employer of other employees similarly situated, within the meaning of FLSA, MLI, and MMFW, and is jointly and severally liable with Corporate Defendant under the FLSA, MLI, and MMFW.

### *YI PING ZHENG*

21.     Y. Zheng was, throughout the period relevant to this lawsuit, the Secretary and a member of the Board of Directors of Corporate Defendant, who had the power to hire and fire employees, supervised Plaintiff and the other employees, gave Plaintiff and other employees their

assignments, determined Plaintiff's and other employees' schedules, determined Plaintiff's and other employees' salaries, and prepared and kept records of the employee payroll.

22.    Throughout the period relevant to this lawsuit, Y. Zheng exercised financial and operational control over the Corporate Defendant, and controlled Plaintiff's and other employees' employments at Hungry Pot Dartmouth.

23.    Y. Zheng acted willfully, intentionally, and maliciously and was Plaintiff's employer, and the employer of other employees similarly situated, within the meaning of FLSA, MLI, and MMFW, and is jointly and severally liable with Corporate Defendant under the FLSA, MLI, and MMFW.

### *SHUO CHEN*

24.    S. Chen was, throughout the period relevant to this lawsuit, a member of the Board of Directors of Corporate Defendant, who had the power to hire and fire employees, supervised Plaintiff and the other employees, gave Plaintiff and other employees their assignments, determined Plaintiff's and other employees' schedules, determined Plaintiff's and other employees' salaries, and prepared and kept records of the employee payroll.

25.    Throughout the period relevant to this lawsuit, S. Chen exercised financial and operational control over the Corporate Defendant, and controlled Plaintiff's and other employees' employments at Hungry Pot Dartmouth.

26.    S. Chen acted willfully, intentionally, and maliciously and was Plaintiff's employer, and the employer of other employees similarly situated, within the meaning of FLSA, MLI, and MMFW, and is jointly and severally liable with Corporate Defendant under the FLSA, MLI, and MMFW.

**LEO "DOE"**

27.    Leo was, throughout the period relevant to this lawsuit, Plaintiff's immediate supervisor at Hungry Pot Dartmouth, who had the power to hire and fire employees, supervised Plaintiff and the other employees, gave Plaintiff and other employees their assignments, determined Plaintiff's and other employees' schedules, determined Plaintiff's and other employees' salaries, and prepared and kept records of the employee payroll.

28.    Throughout the period relevant to this lawsuit, Leo exercised operational control over the Corporate Defendant, and controlled Plaintiff's and other employees' employments at Hungry Pot Dartmouth.

29.    Leo acted willfully, intentionally, and maliciously and was Plaintiff's employer, and the employer of other employees similarly situated, within the meaning of FLSA, MLI, and MMFW, and is jointly and severally liable with Corporate Defendant under the FLSA, MLI, and MMFW.

## STATEMENT OF FACTS

30.    Throughout the period relevant to this lawsuit, Cao worked about seventy-two and two tenths (72.20) hours per week: from about 11:00 AM through 10:06 PM on April 17, 2024; from about 11:00 AM through 10:21 PM on April 18, 2024; from about 11:00 AM through 11:22 PM on April 19, 2024; from about 11:00 AM through 10:55 PM on April 20, 2024; from about 11:00 AM through 10:18 PM on April 21, 2024; from about 11:00 AM through 10:10 PM on April 22, 2024; and from about 11:00 AM through about 2:00 PM on April 23, 2024.

31.    Throughout the period relevant to this lawsuit, Hungry Pot's operating hours were: from 12:00 PM through 10:30 PM on Sundays through Thursdays; and from 12:00 PM through 11:00 PM on Fridays and Saturdays.

32.     Cao regularly had to arrive about one (1) hour before opening time to help set up the restaurant to receive customers. This one (1) hour of work was entirely non-tipped.

33.     During the restaurant's operating hours, Cao spent about an additional one-half (0.5) hour washing pots, and about a further additional one-half (0.5) hour cleaning the grill. This one (1) hour of work was entirely non-tipped.

34.     Throughout the period relevant to this lawsuit, Cao was not paid any base wage or salary (*i.e.*, was paid a regular wage of $0.00 per hour, and an overtime wage of $0.00 per hour), but was paid entirely in tips.

35.     On April 17, 2024, customers tipped Cao one hundred thirty dollars ($130.00) by cash, and three hundred twenty-eight dollars and ninety-four cents ($328.94) by credit card.

36.     On April 18, 2024, customers tipped Cao one hundred sixty dollars ($160.00) by cash, and three hundred twenty-three dollars and three cents ($323.03) by credit card.

37.     On April 19, 2024, customers tipped Cao two hundred seventy-five dollars and twenty-six cents ($275.26) by cash, and four hundred eighty-three dollars and sixty-six cents ($483.66) by credit card.

38.     On April 20, 2024, customers tipped Cao two hundred twenty-three dollars ($223.00) by cash, and six hundred thirty-four dollars and eleven cents ($634.11) by credit card.

39.     On April 21, 2024, customers tipped Cao two hundred ninety dollars ($290.00) by cash, and three hundred thirty-seven dollars and twenty-five cents ($337.25) by credit card.

40.     On April 22, 2024, customers tipped Cao two hundred sixty dollars ($260.00) by cash, and two hundred seven dollars and thirty cents ($207.30) by credit card.

41.     On April 23, 2024, customers tipped Cao at least seven dollars ($7.00) by cash, but zero dollars ($0.00) by credit card.

42.    That is to say, throughout his employment, Cao was tipped three thousand six hundred fifty-nine dollars and fifty-five cents ($3,659.55): one thousand three hundred forty-five dollars and twenty-six cents ($1,345.26) in cash, and two thousand three hundred fourteen dollars and twenty-nine cents ($2,314.29) by credit card.

43.    Cao was permitted to keep all his cash tips, and Cao understood that Leo was supposed to tip out seventy percent (70%) of Cao's credit card tips to him in cash at the end of the week, and would keep thirty percent (30%) for himself.

44.    Even if it had been adhered to, the above arrangement would be unlawful FLSA and MLI, because Leo as a manager and/or employer was not permitted to keep any part of Cao's tips for himself.

45.    However, Defendants both failed to tip out all of Cao's tips, and failed even to tip out seventy percent (70%) of his tips.

46.    According to Leo, he tipped out sixty-five percent (65%) of Chinese workers' (including Plaintiff's) credit card tips to them, and kept thirty-five percent (35%); and tipped out fifty-five percent (55%) of non-Chinese workers' credit card tips to them, and kept forty-five percent (45%).

47.    However, the reality is even worse than either; during Cao's employment, he was only tipped out one thousand one hundred eighty-one dollars and eighteen cents ($1,181.18) of his earned credit card tips, amounting to only about fifty-one percent (51%) of his earned credit card tips.

48.    At the end of his employment, Leo paid Cao an additional one hundred eighteen dollars and eighty-two cents ($118.82) in cash (for a total of one thousand three hundred dollars ($1,300.00) cash together with Cao's tip-out of one thousand one hundred eighty-one dollars and

eighteen cents ($1,181.18)), ostensibly for transport costs but actually because Cao complained to Leo about not receiving his promised seventy-percent tip-out, and an additional $350.00 by Zelle.

49.    However, even counting the above-said four hundred sixty-eight dollars and eighty-two cents ($468.82) as an offset toward unpaid tips, Cao is still owed one thousand six hundred one dollars and ninety-three cents ($1,601.93) in unpaid tips retained by Leo.

50.    Upon information and belief, Cao's retained tips were not disbursed to other employees who customarily and regularly received tips as part of a lawful tip pool, but were retained by Leo.

51.    No one at Hungry Pot Dartmouth, neither Individual Defendants, nor anyone else, gave Cao any notice that there would be a tip credit applied to the minimum wage.

52.    Because no one at Hungry Pot Dartmouth, neither Individual Defendants, nor anyone else, told Cao there would be a tip credit applied to the minimum wage, Defendants were not entitled to claim a tip credit and Cao was entitled to the higher of the full federal or Commonwealth minimum wage for his first forty (40) hours worked per week, and to one and one-half times the higher of the full federal or Commonwealth minimum wage for hours beyond the first forty (40) hours per week.

53.    Further, because Leo retained a portion of Cao's tips for himself, Defendants were not entitled to claim a tip credit and Cao was entitled to the higher of the full federal or Commonwealth minimum wage for his first forty (40) hours worked per week, and to one and one-half times the higher of the full federal or Commonwealth minimum wage for hours beyond the first forty (40) hours per week.

54.    But even if Defendants were entitled to credit Cao's tips toward the minimum wage, which they are not, Cao's regular hourly pay of $0.00 per hour is less than the federal minimum

wage minus the federal maximum tip credit for Cao's first forty (40) hours worked per week; is less than the Commonwealth minimum wage minus the Commonwealth maximum tip credit for Cao's first forty (40) hours worked per week; is less than one and one-half times the federal minimum wage minus the federal maximum tip credit for hours beyond the first forty (40) in the week; and is less than one and one-half times the Commonwealth minimum wage minus the Commonwealth maximum tip credit for hours beyond the first forty (40) in the week.

55.     Throughout the period relevant to this lawsuit, Cao was not exempt from receiving overtime under the FLSA or the MMFW.

56.     Defendants did not keep any records of Cao's working time.

57.     Defendants did not post a notice of employees' rights under the federal and Commonwealth wage-and-hour laws on the premises of First Wok.

58.     Defendants committed the following acts knowingly, willfully, maliciously, and in bad faith against Plaintiff and other employees similarly situated.

59.     According to Leo, Defendants intentionally did not pay Cao a base wage because he was Chinese and because they believed him to be undocumented.

60.     According to Leo, non-Chinese workers were paid base salaries in addition to tips.

61.     However, upon information and belief, these base salaries were about two thousand dollars ($2,000.00) or two thousand one hundred dollars ($2,100.00) per month. Assuming seventy-two-hour (72-hour) workweeks similar to Plaintiff's, such monthly salaries would have amounted to regular hourly rates of six dollars and forty-one cents ($6.41 = $2,000.00/month * 12 months/year / 52 weeks/year / 72 hours/week) and six dollars and seventy-three cents ($6.73 = $2,100.00/month * 12 months/year / 52 weeks/year / 72 hours/week) respectively, which are less than the federal and Commonwealth minimum wages. Further, such monthly salaries would not

have included a premium of one-half times the regular hourly rate for hours worked beyond the fortieth (40th) hour each week, and would thus have deprived employees of overtime.

## COLLECTIVE ALLEGATIONS

62.    Plaintiff brings his FLSA claims on behalf of himself and all other current and former non-exempt workers employed by Defendants at Hungry Pot Dartmouth during the three (3) years preceding the filing of this Complaint, through entry of judgment in this case (the "Collective").

## CLASS ALLEGATIONS

63.    Plaintiff brings his MMFW claims pursuant to Fed. R. Civ. P. 23, on behalf of himself and all other current and former non-exempt workers employed by Defendants at Hungry Pot Dartmouth during the three (3) years preceding the filing of this Complaint, through entry of judgment in this case (the "MMFW Subclass").

64.    Plaintiff brings his MLI claims pursuant to Fed. R. Civ. P. 23, on behalf of himself and all other current and former non-exempt tipped workers employed by Defendants at Hungry Pot Dartmouth during the three (3) years preceding the filing of this Complaint, through entry of judgment in this case (the "MLI Subclass").

65.    The MMFW Subclass and the MLI Subclass are referred to collectively as the "Class." The MMFW Subclass is coextensive with the Class; the MLI Subclass includes some but not all members of the Class.

66.    The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses

are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

### NUMEROSITY

67.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

### COMMONALITY

68.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a.    Whether Defendants employed Plaintiff and the Class members within the meaning of the Massachusetts law;

b.    Whether Defendants failed to pay Plaintiff and the Class minimum hourly wages for their hours worked for Defendants;

c.    Whether Defendants failed to pay Plaintiff and the Class one and one-half times their regular hourly rates, or one and one-half times the minimum hourly wage, whichever is higher, for their hours worked for Defendants beyond the fortieth (40th) hour each week;

d.    Whether Defendants were entitled to tip credits with respect to Plaintiff and the MLI Subclass members;

e.    Whether Defendants retained any portion of Plaintiff's and the MLI Subclass members' tips; and

f.    At what common rate, or rates subject to common method of calculation

were and are Defendants required to pay the Class Members for their work?

*TYPICALITY*

69.    Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage or overtime compensation. All the MLI Subclass members were subject to the same corporate practices of Defendants, as alleged herein, of retaining portions of their tips. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

*ADEQUACY*

70.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in representing plaintiffs in both class action and wage-and-hour employment litigation cases.

*SUPERIORITY*

71.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are

small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

72.    Upon information and belief, Defendants and other employers throughout the state violate the MLI and MMFW. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## CAUSES OF ACTION

### COUNT I.
### VIOLATION OF 29 U.S.C. § 206—FAILURE TO PAY MINIMUM WAGE
### BROUGHT ON BEHALF OF THE PLAINTIFF AND THE COLLECTIVE AGAINST
### THE DEFENDANTS, JOINTLY AND SEVERALLY

73.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

74.     29 U.S.C. § 206(a)(1) provides in relevant part that "[e]very employer shall pay to each of his employees who in any workweek is… employed in an enterprise engaged in commerce or in the production of goods for commerce… $7.25 an hour beginning 24 months after th[e] 60th day [after May 25, 2007]."

75.     While 29 U.S.C. § 203(m)(2)(A) provides that "[i]n determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—(i) the cash wage paid such employee which for purposes of such determination shall not be less than the cash wage required to be paid such an employee on August 20, 1996; and (ii) an additional amount on account of the tips received by such employee which is amount is equal to the difference between the wage specified in clause (i) and the wage in effect under section 206(a)(1) of this title," 29 U.S.C. § 203(m)(2)(A)(ii) further provides, that "[t]he preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips."

76.     29 U.S.C. § 203(m)(2)(B) further provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

77.     Throughout his employment, Plaintiff was not paid any cash wage, and was not compensated other than with tips.

78.     Plaintiff's regular hourly cash wage was therefore less than the minimum wage of seven dollars twenty-five cents ($7.25) per hour, and was also less than two dollars and thirteen

cents ($2.13) per hour—the minimum cash wage required to be paid to tipped employees as of August 20, 1996.

79.     Throughout Plaintiff's employment, Defendants were not permitted to credit any part of his tips towards the minimum wage, due to failure to provide notice pursuant to 29 U.S.C. § 203(m)(2)(A)(ii), and due to Leo, a manager and/or employer, retaining a portion of Plaintiff's tips contrary to 29 U.S.C. § 203(m)(2)(B).

80.     29 U.S.C. § 216(b) provides that "[a]ny employer who violates the provisions of section 206… of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages… and in additional equal amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

81.     Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA by failing to pay Plaintiff minimum wage.

**COUNT II.**
**VIOLATION OF 29 U.S.C. § 207—FAILURE TO PAY OVERTIME**
**BROUGHT ON BEHALF OF THE PLAINTIFF AND THE COLLECTIVE AGAINST**
**THE DEFENDANTS, JOINTLY AND SEVERALLY**

82.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

83.     29 U.S.C. § 207 provides that "[e]xcept as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is… employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours

above specified at a rate not less than one and one-half times the regular rate at which he is employed."

84.    Throughout his employment, Plaintiff was not paid any cash wage, and was not compensated other than with tips; in particular, he was not paid one and one-half times the higher of his regular hourly wage, or the minimum wage, for his overtime hours.

85.    Throughout his employment, Plaintiff was a manual worker and was not exempt from overtime under 29 U.S.C. § 213.

86.    29 U.S.C. § 216(b) provides that "[a]ny employer who violates the provisions of… section 207 of this title shall be liable to the employee or employees affected in the amount of their… unpaid overtime compensation… and in an additional equal amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

87.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA by failing to pay Plaintiff overtime.

## COUNT III.
### VIOLATION OF 29 U.S.C. § 203(m)(2)(B)—UNLAWFUL TIP RETENTION BROUGHT ON BEHALF OF THE PLAINTIFF AND THE COLLECTIVE AGAINST THE DEFENDANTS, JOINTLY AND SEVERALLY

88.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

89.    29 U.S.C. § 203(m)(2)(B) provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

90.    Throughout Plaintiff's employment, Leo, a manager and/or employer, retained a portion of Plaintiff's tips contrary to 29 U.S.C. § 203(m)(2)(B).

91.    29 U.S.C. § 216(b) provides that "[a]ny employer who violates section 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in additional amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

92.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA by retaining portions of Plaintiff's tips.

### COUNT IV.
### VIOLATION OF MASS. GEN. L. CH. 151 § 1—FAILURE TO PAY MINIMUM WAGE BROUGHT ON BEHALF OF THE PLAINTIFF AND THE CLASS AGAINST THE DEFENDANTS, JOINTLY AND SEVERALLY

93.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

94.    Mass. Gen. L. ch. 151 § 1 provides that "[i]t is hereby declared to be against public policy for any employer to employ any person in an occupation in this commonwealth at an oppressive and unreasonable wage as defined in section two, and any contract, agreement or understanding for or in relation to such employment shall be null and void. A wage of less than $15.00 per hour, in any occupation, as defined in this chapter, shall conclusively be presumed to be oppressive and unreasonable, wherever the term ''minimum wage'' is used in this chapter, unless the commissioner has expressly approved or shall expressly approve the establishment and payment of a lesser wage under the provisions of sections seven and nine. Notwithstanding the

provisions of this section, in no case shall the minimum wage rate be less than $.50 higher than the effective federal minimum rate."

95.    While Mass. Gen. L. ch. 151 § 7 provides that "[i]n determining the wage an employer is required to pay a tipped employee, the amount paid to such employee by the employer shall be an amount equal to: (1) the cash wage paid such employee which for purposes of such determination shall be not less than $6.75; and (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in clause (1) and the wage in effect under section 1," it further provides that "[t]his paragraph shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this paragraph, and all tips received by such employee have been retained by the employee, except that this paragraph shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips."

96.    Mass. Gen. L. ch. 149 § 152A(b) further provides that "[n]o employer or any other person shall demand, request or accept from any wait staff employee, service employee, or service bartender any payment or deduction from a tip or service charge given to such wait staff employee, service employee, or service bartender by a patron."

97.    Throughout his employment, Plaintiff was not paid any cash wage, and was not compensated other than with tips.

98.    Plaintiff's regular hourly cash wage was therefore less than the minimum wage of fifteen dollars ($15.00) per hour, and was also less than six dollars seventy-five cents ($6.75) per hour.

99.    Throughout Plaintiff's employment, Defendants were not permitted to credit any part of his tips towards the minimum wage, due to failure to provide notice pursuant to 2 Mass.

Gen. L. ch. 151 § 7, and due to Leo, a manager and/or employer, retaining a portion of Plaintiff's tips contrary to Mass. Gen. L. ch. 149 § 152A(b) and Mass. Gen. L. ch. 151 § 7.

100.    Mass. Gen. L. ch. 151 § 20 provides that "[i]f a person is paid by an employer less than the minimum fair wage to which the person is entitled under or by virtue of a minimum fair wage regulation… the person may institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief, for any damages incurred and for the full amount of the minimum wages less any amount actually paid to him by the employer…. An employee so aggrieved who prevails in such an action shall be awarded treble damages, as liquidated damages, for any loss of minimum wage and shall also be awarded the costs of the litigation and reasonable attorneys' fees."

101.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the MMFW by failing to pay Plaintiff minimum wage.

## COUNT V.
### VIOLATION OF MASS. GEN. L. CH. 151 § 1A—FAILURE TO PAY OVERTIME BROUGHT ON BEHALF OF THE PLAINTIFF AND THE COLLECTIVE AGAINST THE DEFENDANTS, JOINTLY AND SEVERALLY

102.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

103.    Mass. Gen. L. ch. 151 § 1A provides that "[e]xcept as otherwise provided in this section, no employer in the commonwealth shall employ any of his employees in an occupation, as defined in section two, for a work week longer than forty hours, unless such employee receives compensation for his employment in excess of forty hours at a rate not less than one and one half times the regular rate at which he is employed."

104.    Throughout his employment, Plaintiff was not paid any cash wage, and was not compensated other than with tips; in particular, he was not paid one and one-half times the higher of his regular hourly wage, or the minimum wage, for his overtime hours.

105.    Throughout his employment, Plaintiff was a manual worker and was not exempt from overtime under Mass. Gen. L. ch. 151 § 1A(1)–(20).

106.    Mass. Gen. L. ch. 151 § 20 provides that "[i]f a person is paid by an employer less than the minimum fair wage to which the person is entitled under or by virtue of a minimum fair wage regulation… the person may institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief, for any damages incurred and for the full amount of the minimum wages less any amount actually paid to him by the employer…. An employee so aggrieved who prevails in such an action shall be awarded treble damages, as liquidated damages, for any loss of minimum wage and shall also be awarded the costs of the litigation and reasonable attorneys' fees."

107.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the MMFW by failing to pay Plaintiff overtime.

## COUNT VI.
### VIOLATION OF MASS. GEN. L. CH. 149 § 152A—UNLAWFUL TIP RETENTION BROUGHT ON BEHALF OF THE PLAINTIFF AND THE MLI SUBCLASS THE DEFENDANTS, JOINTLY AND SEVERALLY

108.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

109.    Mass. Gen. L. ch. 149 § 152A(b) provides that "[n]o employer or any other person shall demand, request or accept from any wait staff employee, service employee, or service bartender any payment or deduction from a tip or service charge given to such wait staff employee, service employee, or service bartender by a patron."

110.    Mass. Gen. L. ch. 149 § 152A(c) provides that "[n]o employer or person shall cause, require or permit any wait staff employee, service employee, or service bartender to participate in a tip pool through which such employee remits any wage, tip or service charge, or any portion thereof, for distribution to any person who is not a wait staff employee, service employee, or service bartender."

111.    Throughout Plaintiff's employment, Leo, a manager and/or employer, retained a portion of Plaintiff's tips contrary to 29 U.S.C. § 203(m)(2)(B).

112.    Mass. Gen. L. ch. 149 § 152A(f) provides that "[a]ny person or employer who violates this section shall make restitution for any tips accepted, distributed or retained in violation of this section, together with interest thereon at the rate of 12 per cent per annum." It further provides that "[a]n employee claiming to be aggrieved by a violation of this section may proceed pursuant to the second paragraph of section 150."

113.    Mass. Gen. L. ch. 150 § 150 provides that "[a]n employee claiming to be aggrieved by a violation of sections 33E, 52E, 148, 148A, 148B, 148C, 150C, 152, 152A, 159C or 190 or section 19 of chapter 151 may… institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief, for any damages incurred, and for any lost wages and other benefits…. An employee so aggrieved who prevails in such an action shall be awarded treble damages, as liquidated damages, for any lost wages and other benefits and shall also be awarded the costs of the litigation and reasonable attorneys' fees."

114.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the MLI by retaining portions of Plaintiff's tips.

## **JURY DEMAND**

115.    Plaintiff demands a trial by jury on all matters so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and on behalf of others similarly situated, respectfully requests that this Court enter a judgment providing the following relief:

A.     At the earliest practicable time giving notice of this collective action, or authorizing Plaintiff to give notice of this collective action, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of the notice's issuance, been employed by Defendants as non-exempt workers. Such notice shall inform such employees that this lawsuit has been filed, of the nature of this lawsuit, and of their right to join this lawsuit if they believe they were denied minimum wage or overtime, or if tipped, a portion of their tips were retained by an employer or manager;

B.     Certification of this matter as a class action under Fed. R. Civ. P. 23;

C.     A declaratory judgment that the practices complained of herein are unlawful under FLSA, MLI, and MMFW;

D.     An injunction against Corporate Defendant, its shareholders, managers, agents, successors, employees, representatives, and any and all persons acting in concert with it as provided by law, including but not limited to the Individual Defendants, from engaging in each of the unlawful practices and policies set forth herein;

E.     An award of unpaid minimum wages, and liquidated damages equal to unpaid minimum wages, due to Plaintiff and any opt-ins under FLSA;

F.     An award of unpaid overtime, and liquidated damages equal to unpaid overtime, due to Plaintiff and any opt-ins under FLSA;

G.     An award of retained tips, and liquidated damages equal to retained tips, due to Plaintiff and any opt-ins under FLSA;

H.      An award of unpaid minimum wages, and liquidated damages equal to three (3) times unpaid minimum wages, due to Plaintiff and the Class under MMFW;

I.      An award of unpaid overtime, and liquidated damages equal to three (3) times unpaid overtime, due to Plaintiff and the Class under MMFW;

J.      An award of retained tips, and liquidated damages equal to three (3) times retained tips, due to Plaintiff and the MLI Subclass under the MLI;

K.      An award of reasonable attorneys' fees and costs under FLSA, MMFW, and/or MLI;

L.      An award of prejudgment interest under MMFW and MLI; and

M.      Any such other and further legal or equitable relief as the Court may deem necessary, just, and proper.

Dated:  Flushing, NY
        July 12, 2024

TROY LAW, PLLC

*/s/ Tiffany Troy*
Tiffany Troy, Esq.
Aaron B. Schweitzer, Esq.
John Troy, Esq.
TROY LAW, PLLC
41-25 Kissena Boulevard
Suite 110
Flushing, NY 11355
Phone (718) 762-1324
Fax (718) 762-1342
troylaw@troypllc.com
*Attorneys for Plaintiffs*
*John Troy, Esq. and Aaron B. Schweitzer, Esq. to be admitted* pro hac vice